(46 Misc. Rep. 8.)

### McGUINNESS v. ALLISON REALTY CO. et al.

(Supreme Court, Special Term, New York County.  December, 1904.)

1. MUNICIPAL CORPORATIONS—FALL OF BUILDING—ACTION AGAINST CITY.
    Where plaintiff sued for injuries caused by the falling of a building while under construction, and joined the superintendent of buildings of the city of New York and the city as defendants, allegations of the complaint setting out the duties of such superintendent and the city—they being created by statute—are not allegations of fact, but conclusions of law.

**2. SAME—BUILDING CODE.**

A city cannot be held responsible for defects in a building code adopted by the board of aldermen.

**3. SAME—NEGLIGENCE OF BUILDING SUPERINTENDENT.**

The bureau of buildings of the borough of Manhattan is not an administrative department of the city, rendering it liable for the default of the superintendent.

**4. SAME—COMPLAINT—DEMURRER.**

Where, in an action for injuries caused by the fall of a building under construction, the city of New York and the superintendent of buildings of the borough of Manhattan were made defendants, and plaintiff did not allege any personal default on the part of the superintendent, either in permitting the building to be constructed negligently, or in employing incompetent subordinates, his demurrer should be sustained.

Action by Dennis McGuinness against the Allison Realty Company and others. Demurrer to complaint sustained.

Frank A. Acer, for plaintiff.

John J. Delany, Corp. Counsel, for defendants city of New York and Isaac A. Hopper.

BLANCHARD, J. The plaintiff has brought this action to recover damages for personal injuries received by him through the collapsing of the building in the borough of Manhattan, city of New York, known as the "Hotel Darlington," while the same was in the course of construction. The defendants are the owners of the property, the builders engaged in the construction of the building, also the city of New York and Isaac A. Hopper, who at the time of the accident was superintendent of buildings in the borough of Manhattan. The city and Hopper have separately demurred to the complaint upon the ground that it fails to state facts sufficient to constitute a cause of action against them. The plaintiff, in various forms of allegation in the complaint, sets forth and defines the duties and obligations of the city and of the defendant Hopper, as superintendent of buildings, in respect to the construction of the building in question, and alleges, in general terms, that the city and Hopper have violated those duties in such manner as to have become guilty of negligence causing, or contributing to the cause of, the plaintiff's injuries. As the duties of the city and of the superintendent of buildings are created and defined by statute, the allegations of the complaint setting forth those duties must be regarded as conclusions of law, not as allegations of fact. Rauh v. Board of Commissioners, 66 How. Prac. 368; Walsh v. Trustees of N. Y. & Bklyn. Bridge, 96 N. Y. 438. By section 405 of the city charter (Laws 1901, p. 177, c. 466) the bureau of building is created as a department in the office of the president of each borough of the city. The superintendent of buildings is appointed by the president of the borough, and is removable by him whenever, in his judgment, the public interest shall require. By section 406 of the charter the superintendent has general charge of the administration of all rules, regulations, and ordinances relating to the construction of buildings, subject, however, to the superior authority of the president of the borough. The superintendent has power to appoint, and at

pleasure to remove, the subordinate officers in his department, including inspectors of buildings. By section 407 of the charter, power is granted to the board of aldermen of the city of New York to provide a building code for all matters relating to the construction of buildings erected or to be erected in the city of New York. Such building code was adopted by the board of aldermen September 12, 1899, and became an ordinance, with the approval of the mayor, October 24, 1899. By section 409 of the city charter the president of the borough has power to establish general rules and regulations for the administration of the building department in his borough. The superintendent of buildings is bound by the civil service law to select and appoint the inspectors of buildings, and his other subordinates mentioned in the charter, from those who have passed a civil service examination showing their fitness for the position to which they may be appointed. People ex rel. McClelland v. Roberts, 148 N. Y. 363, 42 N. E. 1082, 31 L. R. A. 399; Laws 1899, p. 797, c. 370, § 7.

Upon the facts stated in the complaint the city of New York cannot be held responsible for the plaintiff's injuries. It is conceded that the board of aldermen adopted a building code, and no facts are alleged from which the legal conclusion would follow that this building code was inadequate to accomplish its purpose. It must be presumed that the board of aldermen did their duty as public officials and adopted a proper building code. If they did not, the city cannot be held responsible for their failure to do so. The board of aldermen constitute the municipal legislature, and the ordinances adopted by them, when approved by the mayor, have the force and effect of statutes. City of Rochester v. Simpson, 134 N. Y. 414, 31 N. E. 871; City of Buffalo v. N. Y., L. E. & W. R. Co., 152 N. Y. 276, 46 N. E. 496. The city is not liable to a citizen for the failure of the board of aldermen to pass an ordinance provided for by law, nor for failure to enforce an ordinance. Landau v. City of New York, 180 N. Y. 48, 72 N. E. 631; Leonard v. City of Hornellsville, 41 App. Div. 106, 58 N. Y. Supp. 266; Cain v. City of Syracuse, 95 N. Y. 83. The city has no direct supervisory or mandatory control over the conduct of the board of aldermen, and, if they fail in their duty to pass proper ordinances, the remedy must be sought and enforced by methods outside of the mere authority vested in any municipal officer or body. In this case, however, it appears that the board of aldermen did adopt a building code. If it was inadequate to secure the safe construction of the building in question, the city had no power, through any of its administrative officers, to make it adequate. This could be done only by the board of aldermen themselves. Greater New York Charter, § 407 (Laws 1901, p. 179, c. 466). The powers and duties of the borough president and of the superintendent of buildings are entirely administrative. Id., §§ 406, 408, 409. They could make rules and regulations to secure the effective enforcement of the provisions of the building code, and for the administration of the bureau of buildings, and do all necessary and proper acts for those purposes. Having done this, their powers and duties extended no further. Nor may the city

be held liable for the plaintiff's injuries upon the theory that it is responsible for any default of the defendant Hopper as superintendent of buildings. Hopper was not the agent or representative of the city in any legal sense. The bureau of buildings, of which he was the chief executive officer, is not an administrative department of the city. Id. § 96. It was a suboffice in the office of the president of the borough of Manhattan. It is true that this bureau forms a part of the government of the city in so far as that government relates to the borough of Manhattan. But the city, as an entire corporate municipality, had no jurisdiction or supervision over the administration of this bureau. The head of it is the president of the borough of Manhattan, who is elected by the electors of the borough of Manhattan. The defendant Hopper was his appointee, and was subject and subordinate to him alone. The city had no proprietary interest in the building in question, which was a private building being erected on land in which the city or the general public had no rights or interest whatever. The sole reason for the supervision of the building by the bureau of buildings was to secure its construction in accordance with law. The city itself could not violate the law in this respect, because it was not itself constructing the building. The numerous authorities holding the city liable for bodily injuries occurring to persons upon the public highways owned or controlled by the municipality, or received in the course of the construction of public works, through the negligence of the agents of the city, have no application to the alleged facts in this case. In those cases the rule of respondeat superior may in many instances be invoked. But in this case Hopper cannot be held to be the agent of the city, and the rule of respondeat superior cannot be properly urged. Maxmilian v. Mayor, 62 N. Y. 160, 20 Am. Rep. 468; Connors v. Mayor, 11 Hun, 439. Nor is any fact alleged in the complaint from which it can be held that the defendant Hopper is liable or responsible for the occurrence of this accident. His duties did not require him to have personal knowledge of any violations of the law in respect to the building in question. As has been shown, the charter directed him to appoint inspectors of buildings. He was bound to appoint them from those whom the civil service commission had certified to be competent and eligible for that position. He could not use his unrestricted choice in making his selection of inspectors. He was bound to assume that the men furnished to him by the civil service commission for his selection were competent. No facts are alleged indicating that they were not competent. The complaint states numerous conclusions to that effect, but no facts upon which the court can base a conclusion of law that the inspectors and other subordinates in the bureau of buildings were in fact incompetent. If it appeared from the complaint that the defendant Hopper had knowingly appointed incompetent subordinates, and had knowingly permitted the building to be constructed in an unsafe manner and in violation of law, then a different case would be presented; but, as the complaint stands, there is no fact alleged indicating any personal negligence whatever on the part of the defendant Hopper, and he is therefore not liable

to the plaintiff. Donovan v. McAlpin, 85 N. Y. 185, 39 Am. Rep. 649. The demurrers should, therefore, be sustained, with costs, with leave to the plaintiff to serve an amended complaint within 20 days on payment of costs.

Judgment for plaintiff.